**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| ANDRE WALLACE, | |
| Plaintiff, | Case No. _____ |
| v. | |
| SINE TRADING INTERNATIONAL, LLC, | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

NOW COMES Plaintiff, Andre Wallace, by and through his attorney, Prabhu Narahari, Esq., of Ruppert Manes Narahari LLC, and files this Complaint alleging as follows:

### I. Nature of the Action

1.      Plaintiff brings this Complaint to recover damages under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.,* Section 1981 of the Civil Rights Act of 1866, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 *et seq.*, and the Fair Labor Standards Act. Plaintiff alleges that he was subjected to persistent racial harassment and discrimination by Defendant's management staff. Plaintiff further alleges that he was wrongfully terminated after calling attention to the prolonged disparate treatment perpetrated against him based solely on his race.

### II. Jurisdiction and Venue

2.      This action arises under the Title VII.  This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1331.

3.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

4.      Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

5.      Plaintiff filed a timely charge with the Equal Employment Opportunity Employment Commission ("EEOC") regarding her allegations under Title VII on March 20, 2019, under charge number 533-2019-01134. *See Exhibit 1*.

6.      Plaintiff was mailed Notice of Right to Sue from the ("EEOC") on June 25, 2020. This Complaint has been filed within ninety days of the Plaintiffs receipt, thus making this action timely. *See Exhibit 2.*

### III. Parties

7.      Plaintiff, Andre Wallace ("Plaintiff"), is an adult individual with a primary residence located at 329 Anthony Street, Pittsburgh, PA 15210.

8.      Defendant, Sine Trading International, LLC ("Defendant"), is a Pennsylvania limited liability company with a regular place of business located at 1439 North Franklin Street, Pittsburgh, PA 15233.

### IV. Facts

9.      Plaintiff began working for Defendant on April 30, 2018 as a member of the Sales and Customs Clearance Department. His job responsibilities primarily consisted of answering phones, conducting data entry, and tracking shipments.

10.     When Plaintiff first started working for Defendant, he was compensated at a rate of $13.00 per hour. After a ninety-day period, Plaintiff's pay was increased to $15.00 per hour.

11.     Because Defendant company was small, Plaintiff was often left to run the day-to-day business of his department by himself.

12.     In November 2018, two additional employees, Jason Conley and Ryan Mageras, were hired to the Sales and Customs Clearance Department.

13.     Plaintiff is an African-American male. Mr. Conley and Mr. Mageras are both Caucasian males.

14.     At one point, shortly after they were hired, Mr. Conley and Mr. Mageras found a document which listed the pay rates of all employees of Defendant. They shared the information with Plaintiff, who then learned that both of the newly hired employees received a higher rate of pay than he.

15.     In fact, Mr. Conley and Mr. Mageras were compensated at a rate of $22.00 per hour while Plaintiff continued to earn $15.00 per hour. All three men were employed in the same position

16.     Additionally, Plaintiff was regularly harassed by Defendant owner, Wayne Fu.

17.     Mr. Fu regularly took an aggressive tone with Plaintiff. Without provocation, Mr. Fu often screamed and cursed at Plaintiff for no legitimate reason. This often took place in front of other employees.

18.     Mr. Fu never treated Mr. Conley or Mr. Mageras in that manner.

19.     Mr. Fu refused to pay a time-and-a-half rate to Plaintiff for the overtime hours which he worked. Plaintiff often worked upward of forty-five hours per week, and he was not an employee exempt from overtime compensation.

20.     Additionally, Mr. Fu permitted Mr. Conley and Mr. Mageras a sixty-minute lunch break while Plaintiff was only permitted a thirty-minute break.

21.     Mr. Fu permitted Mr. Conley and Mr. Mageras to leave the office for the day at 5:30 p.m. whole Plaintiff was often required to work as late as 8:00 p.m. Plaintiff was not compensated at an overtime rate for the additional hours in which he worked.

22.     Plaintiff was often scheduled to work on holidays and weekends while other, Caucasian staff members were granted time off.

23.     On December 18, 2018, Plaintiff sent an email to Mr. Fu which inquired as to the reason that he was paid less than Mr. Conley and Mr. Mageras. Plaintiff additionally asked Mr. Fu if the workplace issues that he faced were the result of racism.

24.     Mr. Fu responded by stating that Plaintiff's job performance was poor. He then reduced Plaintiff's pay to $12.00 per hour.

25.     Despite this accusation, Plaintiff had never received any written or verbal reprimands regarding his work performance.

26.     Plaintiff was terminated without explanation on January 3, 2019.

**COUNT I**
**Racial Discrimination and Hostile Work Environment in Violation of Section 1981 of the Civil Rights Act of 1866**

27.     The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

28.     Section 1981 of the Civil Rights Act of 1866 has been interpreted by the United States Supreme Court to protect "identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." St. Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987).

29.     In order for a plaintiff to prevail on a claim under Section 1981, he or she "must initially plead and ultimately prove that, but for race, [he or she] would not have suffered the loss of a legally protected right." Comcast Corp. v. Natl. Assn. of African Am.-Owned Media, 18-1171, 2020 WL 1325816, at *7 (U.S. Mar. 23, 2020).

30.     Generally, courts apply the same standards of proof for claims under Section 1981 as applies to Title VII claims. Ocasio v. Lehigh Valley Fam. Health Ctr., 92 Fed. Appx. 876, 879 (3d Cir. 2004) (unpublished); Manatt v. Bank of Am., NA, 339 F.3d 792, 797 (9th Cir. 2003).

31.     Thus, in order to establish a *prima facie* case "for employment discrimination due to a hostile work environment under 42 U.S.C. § 1981, a plaintiff must show: (1) that he or she suffered intentional discrimination because of race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability." Id.

32.     Plaintiff is a member of a protected class, as he is an African-American male.

33.     Plaintiff was subjected to "intentional discrimination because of race" as he was treated with less respect than his Caucasian counterparts. *See* Id.

34.     Plaintiff was additionally compensated at a lower hourly rate than his Caucasian counterparts, despite the fact that they held the same position and Plaintiff had been employed by Defendant for longer.

35.     In addition to receiving a lower rate of compensation than more recently hired employees, Plaintiff was consistently harassed and yelled at without cause by the owner of Defendant company.

36.      Plaintiff further suffered disparate treatment as he was required to work longer hours, including weekends and holidays, than his Caucasian counterparts. In fact, Plaintiff was allotted less time for lunch than the Caucasian members of his department.

37.      When Plaintiff inquired as to why he was compensated at a lower rate of pay than his Caucasian counterparts, his pay was reduced. Plaintiff was terminated shortly after he implied that racism played a role in his diminished rate of pay.

38.      This creates a strong inference of racial discrimination and wrongful termination under the Civil Rights Act.

39.      Further, it is clear that this treatment of African-Americans would impact a reasonable person in Plaintiff's position.

40.      Defendant was Plaintiff's employer, and, as a result, exercised control over Plaintiff's employment.

WHEREFORE, Plaintiff hereby requests Plaintiff hereby requests that this Honorable Court consider the above and grant relief in his favor. Specifically, Plaintiff prays this Honorable Court award back pay, front pay, compensatory and liquidated damages as authorized by statute, prejudgment and continuing interest, and reasonable attorney's fees.

### COUNT II
### Racial Discrimination in violation of Title VII and the PHRA

41.      The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

42.      Title VII of the Civil Rights Act of 1964 prohibits employers from subjecting employees to disparate treatment because of their race.

43.      To establish a *prima facie* case of racial discrimination in employment under Title VII, a plaintiff must show: "(1) [h]e is a member of a protected class; (2) [h]e was qualified for the

position he sought to attain or retain; (3) [h]e suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." Trapani v. Greatwide Logistics Services, LLC, 487 Fed. Appx. 21, 23–24 (3d Cir. 2012)(unpublished) (*citing* Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir.2008)).

44.     Here, Plaintiff is a member of a protected class as he is an African-American male.

45.     Plaintiff was qualified for his position. He received no verbal or written warning regarding his work performance. Plaintiff was a dedicated employee who exceeded all employment-based expectations of Defendant.

46.     Plaintiff suffered adverse employment by way of the treatment was he was regularly subjected to by Defendant owner. He was frequently admonished without cause by Mr. Fu while his Caucasian counterparts were treated with respect and dignity.

47.     Plaintiff also suffered adverse employment action when his pay was decreased immediately after he inquired as to why his Caucasian counterparts were compensated at a higher rate than he.

48.     Plaintiff suffered further adverse employment action when he was terminated and dismissed without cause.

49.     An inference of intentional discrimination can be made as a result of the disparate treatment that Plaintiff faced followed by the adverse employment action. In fact, his reduced pay and ultimate termination occurred immediately after he asked about his pay and implied that the negative treatment that he received was a result of racism.

WHEREFORE, Plaintiff hereby requests Plaintiff hereby requests that this Honorable Court consider the above and grant relief in his favor. Specifically, Plaintiff prays this Honorable

Court award back pay, front pay, compensatory and liquidated damages as authorized by statute, prejudgment and continuing interest, and reasonable attorney's fees.

## COUNT III
### Retaliation in violation of Title VII and the PHRA

50.    The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

51.    In order to state a *prima facie* claim for retaliation under Title VII and the PHRA, a plaintiff must show:

    a.  He "engaged in a protected activity," including "informal protests of discriminatory employment practices" made to a member of a defendant's management;

    b.  "Adverse" employment action was taken against the plaintiff "after or contemporaneous with the employee's protected activity;" and

    c.  "A causal connection between the protected activity and the adverse action." Moore v. Sec. U.S. Dept. of Homeland Sec., 718 Fed. Appx. 164, 166-67 (3d Cir. 2017) (unpublished) (*quoting* Daniels v. Sch. Dist. of Phila., 776 E. 3d 181, 193 (3d Cir. 2015).

52.    Here, Plaintiff engaged in a protected activity when he emailed the owner of Defendant and inquired as to why he was paid at a lower rate than his Caucasian counterparts.

53.    In this email, Plaintiff also asked if the disparate treatment that he faced was the result of racism.

54.    Adverse employment action was immediately taken against Plaintiff in the form of a pay decrease.

55.    He was subsequently terminated without cause a short period after he engaged in the protected activity.

56. A causal connection exists between Plaintiff's implication that racism was the cause of the disparate treatment that he faced and the adverse action taken against him. Plaintiff immediately was informed that he would receive a pay decrease, and he was terminated shortly after.

WHEREFORE, Plaintiff hereby respectfully requests that this Court enter judgement in his favor, and against Defendant, and award all damages available at law in equity, including: lost wages, front pay, compensatory damages, punitive damages, court costs, attorney fees, prejudgment and continuing interest, and any other relief that the Court deems necessary and proper.

### COUNT III
**Violation of the Fair Labor Standards Act**

57. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

58. The Fair Labor Standards Act ("FLSA") mandates overtime payments for employees who work more than forty hours in a given work week. Smith v. Allegheny Techs., Inc., 754 Fed. Appx. 136, 138 (3d Cir. 2018) (unpublished).

59. Here, Plaintiff regularly worked in excess of forty-five hours per week.

60. Plaintiff was not compensated on a basis of time-and-a-half for the additional hours that he worked each week.

61. When he requested paystubs from Defendant, Plaintiff was denied access.

WHEREFORE, Plaintiff hereby respectfully requests that this Court enter judgement in his favor, and against Defendant, and award all damages available at law in equity, and any other relief that the Court deems necessary and proper.

Respectfully Submitted,

/s/ Prabhu Narahari
Prabhu Narahari, Esq.
PA ID: 323895
**Ruppert Manes Narahari LLC**
600 Grant St., Suite 4875
Pittsburgh, PA 15219
(412) 626-5588 Direct
(412) 650-4845 Fax
pn@rmn-law.com

## VERIFICATION

I, Andre Wallace, swear under penalty of perjury under the laws of the United States of America that the facts alleged in the foregoing Complaint are true and correct to the best of my knowledge.

_____

Andre Wallace